Argued and submitted March 14, affirmed June 22, petition for review allowed
September 27, 1994 (320 Or 270)

STATE OF OREGON,
by and through
DEPARTMENT OF TRANSPORTATION,
*Respondent,*

*v.*

HEWETT PROFESSIONAL GROUP,
a joint venture comprised of
John B. Brams, Thomas S. Miller, M.D.,
Corinne D. Miller and Peter Lyon, M.D.,
*Appellant,*

*and*

CAPITAL CONSULTANTS, INC.,
an Oregon corporation,
*Defendant.*

(9108-05286; CA A77301)

876 P2d 844

James N. Westwood argued the cause for appellant. With him on the briefs were Dennis P. Rawlinson and Miller, Nash, Wiener, Hager & Carlsen.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Riggs, Judge.

RIGGS, J.

**RIGGS, J.**

Defendant property owner appeals from the judgment in this condemnation action. We affirm.

The state initiated the proceeding to take defendant's property for use in the Westside Corridor light rail project. According to defendant, in preliminary contacts, the state misrepresented or negligently indicated to defendant that it would not take the property, or at least the part of the property containing a structure called the Sylvan Building.[1] Contemporaneously, defendant was in the process of planning and applying for permission to Multnomah County to demolish the Sylvan Building and to construct a new medical office facility on the property. By the time the state notified defendant of its intent to take the property, the Sylvan Building had been demolished and construction of the new building had been commenced but not completed.

Defendant's theory of the case is, in essence, that the state's agents concealed and timed the taking of the property in such a way as to minimize its compensable value, by lulling defendant into tearing down the existing structure and leaving only the bare ground and a partially constructed new building at the time of the taking. Defendant maintains that the state's aim was to eliminate the value of the Sylvan Building from the just compensation for the taking. In pursuit of its theory, defendant pleaded the affirmative defenses of estoppel and "timing manipulation," and filed counterclaims for misrepresentation and "inverse condemnation and condemnation blight."

The trial court granted the state's motion for partial summary judgment as to those defenses and counterclaims, and also struck defendant's allegations concerning the value of the Sylvan Building. The case proceeded to trial. The court adhered to the pretrial rulings, but allowed defendant to put on evidence about the course of dealings between it and the state and about the value of the Sylvan Building before it was

---

[1] The state ardently disagrees, and also points out that defendant's protestations of ignorance ring false in light of the fact that the project, the related land use and other proceedings and the planning process for the project were highly publicized events. It is unnecessary for us to resolve that dispute in this opinion. We relate the facts about it only to the extent necessary to an understanding of the issues and to enable the reader to understand the acrimony from which the issues emerged.

destroyed. The court also instructed the jury that it could decide to include "the value of the Sylvan Building and the costs associated with its removal" in its award. The jury awarded just compensation in an amount less than the state had deposited with the court.

■　Defendant assigns seven errors. Five of them are directed at the summary judgments on their counterclaims and defenses and the striking of their allegations concerning the Sylvan Building's value. The state responds that each of the rulings was correct but, even if they were not, the error was harmless, because the defenses, counterclaims and allegations were aimed solely at enabling defendant to recover the value of the Sylvan Building and removal costs as part of the award of just compensation. Because defendant was allowed to put on all the evidence it desired about those matters and the state's putative misconduct, and because the jury was allowed to include the value and costs in its award, the state maintains that the summary judgments and striking of the allegations simply eliminated "labels" and subtracted nothing of substance from defendant's case.

Defendant replies:

> "The harm lies in the difference between a pile of boards and a completed house, or between 14 random lines of verse and a classic sonnet — without the frame on which to build its case for just compensation, [defendant] had no chance of a fair hearing from the jury."

We disagree. The defenses and counterclaims that defendant asserted are *not* the "frame" of a case *for just compensation*; indeed, the theories in defendant's defenses and counterclaims have no factual or legal bearing on the value of the building and the removal costs independent of the condemnation claim itself. The error, if any, in granting the partial summary judgments, was harmless. So too was the striking of the allegations of value, in view of the fact that defendant was permitted to produce evidence of and argument concerning value at trial. We reject the five assignments that challenge the partial summary judgments and the striking of the allegations.

In its next assignment, defendant turns to the value of the uncompleted medical facility structure. The assignment reads:

"The Trial Court Erred in Failing to Instruct the Jury Properly on the Suitable 'Cost Basis' Method of Property Valuation."

Defendant requested a "cost basis" instruction, which the trial court gave with only insubstantial departures, about which defendant does not complain. Defendant's requested instruction reads:

"In this case, [defendant] was in the process of constructing a new building on its property at the time the property was taken. If you find that because of this construction project either no market existed for the property, or that use of the fair cash market value method alone would be unjust, a cost method may be used to determine just compensation.

"Under the cost method, you may determine the value of just compensation by calculating the fair cash market value of the land as if it were bare, plus the reasonable costs and expenses of the aborted construction project. Costs and expenses are reasonable if one could reasonably anticipate they would have been regained in the market value of the building at completion of the project.

"However, nothing shall be allowed for speculative value. [Defendant] is entitled to receive the value of what it has been deprived, and no more. To award less would be unjust to [defendant]; to award more would be unjust to the State."

Defendant applauds the court for giving the substance of that instruction, but then complains that the court committed error in other jury instructions and, in particular, by giving what defendant describes as "the State's absolutely contradictory and legally incorrect Requested Instruction No. 19." That instruction reads:

"The defendants have introduced evidence of certain costs which they claim were expended in the acquisition and developing of their property. I instruct you that such alleged costs and expenditures are not direct evidence of market value. I further instruct you that *you may consider such alleged costs and expenditures only to the extent that they actually reflect in the fair market cash value of the defendant's property as of [the date of the taking].*" (Emphasis supplied.)

Defendant argues that the latter instruction, and particularly the emphasized language, is wrong because, under the view of the law that defendant now takes,

"where the jury concludes there is no market for a partially built structure, fair cash market value is *excluded* from use in pricing the improvement, and the separate cost basis is used as the direct measure, not merely a 'reflection,' of just compensation." (Emphasis defendant's.)

Defendant explains further that, when

"a partially completed building is condemned, the law plainly allows evidence of the condemnee's cost of construction to that point, not as evidence of 'market value,' but as an *independent* and *direct* measure of the compensation to be given." (Emphasis defendant's.)

■■ However, defendant's exception to the giving of the state's instruction was not made on the ground that defendant now asserts. Its attorney said:

"We take particular exception to their exhibit — or their requested instruction 19 that costs are not evidence of market value. I think their own authorities in the State's own trial memorandum clearly say that costs can be evidence of market value, and indeed in this case they were some of the primary evidence of market value. But for the record, we note that, in our opinion, misconstrues our legal theory and may have caused some misleading in the jury's mind as to what they can use and what they cannot use as evidence of value here."

Nothing in that exception alerted the court to any theory of the kind defendant advances on appeal. The exception was to the effect that the state's instruction improperly suggested that the evidence of costs could *not be evidence* of market value,[2] not that the costs could be the measure of just compensation *independently* of market value. The asserted error in the instruction, if there was one, was unpreserved.[3]

---

[2] Although it is not entirely clear, the exception seems to have been concerned with the part of the instruction that precedes the emphasized language that concerns defendant now. However, it is clear that the exception did not take issue with the instruction on the same ground as defendant argues on appeal.

[3] For purposes of our discussion, we assume without deciding that defendant's own requested instruction embodies the legal theory that defendant advances on appeal. However, its exception to the state's instruction was not made on that theory, and the giving of the state's instruction is the target of the assignment. Defendant also contends that the instructions were skewed because the court gave another requested instruction of the state's twice. However, defendant does not contend that that instruction was wrong and does not convince us that giving the correct instruction a second time was prejudicial.

As part of the same assignment, defendant maintains that the court erred in refusing its requested instructions and in giving the state's instruction pertaining to whether the value of the Sylvan Building should be included in the compensation award. This argument is a rehash of defendant's arguments directed against the partial summary judgment on its affirmative defenses and counterclaims. In any event, the argument is well outside the scope of the assignment of error. It has no relationship either to "valuation" methods generally, or "cost basis" specifically.

■ In its remaining assignment, defendant first argues that the court erred in receiving evidence, offered by the state, of the financial statements of defendant's principals. Defendant contends that the evidence was irrelevant and that its admission also ran counter to the court's order on defendant's motion *in limine* "to restrict the State's referring to [defendant's principals] as rich doctors." We conclude that the evidence that was actually received was relevant and was properly received.

Defendant had put on evidence that tended to show that a million dollar loan to defendant's principals was directly probative of what the value of the property would be after the prospective completion of the new building. The state introduced the financial statements, which the lender had required as part of the loan transaction, after the state's appraiser and other witnesses provided testimony, without objection, that tended to show that the loan was dependent on the financial strength of the principals as well as or instead of on the value or economic viability of the planned building. One of the other witnesses was an officer of the lender, who testified about the existence of these financial statements and about the general purpose that such statements serve in making lending decisions. In sum, the financial statements were responsive to defendant's evidence and were also supportive of testimony that was favorable to the state and to which defendant had not objected. Defendant objected to the admission of the statements only on relevance grounds. The court did not err by admitting the evidence.

■ In the same assignment, defendant also argues that the state's trial attorney violated two ethical rules through statements in his closing argument. Defendant made no

objection to the purportedly offending statements, but argues nonetheless that the attorney's argument, "even in the absence of an objection, is sufficient ground for reversal." The state answers, and we agree, that defendant's quotations of the statements it attacks take them out of context, and that defendant's characterizations of the statements are untenable when they are read in their context. As we said in *State v. Tremblay*, 4 Or App 512, 522, 479 P2d 507, *rev den* (1971), "[w]e find nothing in [the state's attorney's] remarks to cause us to waive the rule requiring proper objection or exception."

Affirmed.